RICHARD M. OBERTO
ATTORNEY AT LAW
CA State Bar No. 247285
516 W. Shaw Ave. Ste 200
Fresno, California  93704
Telephone: (559) 221-2557

Attorney for the defendant,
Deena Vang Lee

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. 1:19-cr-00081 |
| *Plaintiff*, | ) SENTENCING MEMORANDUM BY THE |
| v. | ) DEFENDANT DEENA VANG LEE |
| DEENA VANG LEE, | ) Hearing Date: 5/8/2023 |
| | ) Hearing Time: 8:30 a.m. |
| *Defendant*. | ) Courtroom: 1 |
| | ) Hon. District Judge: Ana I. de Alba |

**To the United States District Court for the Eastern District of California, the United States Attorney's Office for the Eastern District of California, and the Probation Department for the Eastern District of California:**

Please accept this as the Sentencing Memorandum by the defendant DEENA VANG LEE ("Ms. Lee").  The tax loss that resulted from Ms. Lee's offense conduct went primarily to her customers, rather than to Ms. Lee personally.  *See* Dkt. No. 83, Presentence Report ("PSR"), p. 17, paras. 97-98.  The counts where Ms. Lee aided and assisted others (i.e. counts 6, 8-11) resulted in nearly nine-times the restitution amount as the counts where Ms. Lee under-reported her own income (i.e. counts 16-18).  *Id.*  Meanwhile, the most recent offense conduct dates back to the tax year 2015.  *Id.*, p. 2.  Since that time, Ms. Lee spent the past several years working as a licensed vocational nurse ("LVN"), raising her children as single mother, and helping others in need.  *Id.*, pp. 7, 13-14, paras. 22-23, 73-79; Dkt. No. 83-5, PSR, Character Letters.

Ms. Lee asks that the court vary downward from the applicable advisory sentencing range under the United States Sentencing Guidelines ("USSG").  The PSR sets forth the correct advisory sentencing range and recommends a total prison term of 54 months,

1

finding no basis for any departure.  Dkt. 83, PSR, p. 17, para. 104; Dkt. No. 83-6, PSR, Sentencing Recommendation, pp. 1-3.  For counts 1-3, 6, 8-11, and 16-18, the PSR recommends an advisory-range sentence of 30 months.  Dkt. No. 83-6, PSR, Sentencing Recommendation, pp. 1-3.  For counts 4-5, the PSR recommends a mandatory consecutive sentence of 24 months, with those two counts running concurrent to each other.  *Id.*, p. 3.  Ms. Lee asks that the court vary downward from the 30-month portion of the advisory sentence.  She asks that based on her background, offense circumstances, and exceptional presentence rehabilitation.  18 U.S.C. 3553(a).

In addition to a prison term, Ms. Lee is also subject to criminal monetary penalties, including a special assessment and restitution.  *See* Dkt. No. 83, PSR, pp. 7, 16, paras. 19, 94.  Ms. Lee's formal objections to the PSR address the amount of those penalties and the required installment payments.  Dkt. Nos. 87-89, Formal Objections, Objection Nos. 1-6, 7-8.  Ms. Lee asks that the court take into consideration her substantial financial hardship and order her to pay not less than 3% of her monthly gross income toward her criminal monetary penalties.  18 U.S.C. 3013, 3572(a), (d), 3583(d), 3664(f); USSG, sec. 5E1.1(f).  The order would be subject to the condition that if Ms. Lee's financial circumstances improved, she would have to report the change and the court could consider increasing the percentage of gross income that Ms. Lee must pay toward her criminal monetary penalties.

**I.     From the time of Ms. Lee's earliest childhood, her mother suffered from disabilities that included rheumatoid arthritis, schizophrenia, and depression.**

Ms. Lee's parents were Hmong immigrants from Laos.  When Ms. Lee was a small child, her parents struggled to maintain a household and find time for the children.  Ms. Lee's mother suffered from debilitating health problems, which included rheumatoid arthritis, schizophrenia, and depression.  Dkt. No. 83, PSR, p. 7, para. 22.  When Ms. Lee was four years old in 1985, her mother gave birth to twins and became bedridden.  *Id.*, p. 10, para. 53.  Ms. Lee and her sisters began caring for their sick mother.  *Id.*  Ms. Lee's mother regained the ability to walk within the year, but her mobility remained limited.  In 1990, Ms. Lee's mother qualified for social security disability benefits.  *Id.*, para. 52.

Meanwhile, Ms. Lee's father worked two jobs, day and night, doing welding and factory work, until approximately 1987, when he started working as a teacher's aide and later as a school custodian. *Id.*

Despite the hardship at home, Ms. Lee excelled in school. She was accepted into various University of California schools, but decided to stay home to help her parents and care for her younger siblings. Dkt. No. 83, PSR, p. 10, para. 53. The family support that Ms. Lee provided freed up her elder sister to attend U.C. Berkeley and her younger brother to attend U.C. Davis. *Id.* Ms. Lee was able to attend Fresno State, but left the university without a degree due to her own health complications arising from a condition called Idiopathic Thrombocytopenia. *Id.*, p. 11, para. 60. The condition causes loss of blood platelets, resulting in bleeding and bruising. *Id.* Ms. Lee took a prescription medication called Prednizone to treat the condition. When the condition stabilized, she decided to study to become an LVN, rather than try again to earn a four-year degree.

**II.     Despite the hardship growing up, Ms. Lee earned an LVN certificate and supported her family.**

In 2012, Ms. Lee earned her LVN certificate, enabling her to support her family and pursue a variety of career paths. She worked as an LVN for local hospitals and care facilities in Fresno, as a travel nurse throughout the state, and as an LVN instructor for a local academy. Dkt. No. 83, PSR, pp. 13-14, paras. 73-79. Her students and colleagues admired her compassionate approach to her work. Dkt. No. 83-5, PSR, Character Letters, p. 4. While the present case was pending, she started her own staffing company for nurses. Dkt. No. 83, PSR, p. 12, para. 72.

After several years as an LVN, Ms. Lee wanted to expand her skill-set by becoming a Registered Nurse ("RN"). In 2019, she satisfied an important prerequisite by earning her bachelor of science in nursing. Dkt. No. 83, PSR, p. 12, para. 68. When she applied for her RN license, the present case prompted inquiries from the California Board of Registered Nursing, leading to a hold on her application. In all likelihood, the conviction in the present case will result in the denial of Ms. Lee's RN application and the revocation of

her LVN certificate.  She will need the help of a vocational specialist to direct her where she might be able to pursue new education and training and find new employment.

### III. The tax loss that resulted from Ms. Lee's offense conduct went primarily to her customers, rather than to Ms. Lee personally.

According to the witnesses who testified during the trial, Ms. Lee's tax customers had little or no understanding of their tax filings, but were satisfied with their tax refunds and did not ask questions.  As the tax loss and restitution figures show, the inflated refunds went overwhelmingly to the customers, rather than to Ms. Lee personally.  The restitution claimed for the "aiding and assisting" counts (i.e. counts 6, 8-11) comes to $171,873 while the restitution claimed for Ms. Lee's personal under-reporting (i.e. counts 16-18) comes to $19,724.  Dkt. No. 83, PSR, p. 17, paras. 97-98.  The overwhelming benefit in favor of Ms. Lee's customers does not present a defense to the charges, but does show a less culpable mind-set than in most tax cases.  While some benefits did accrue to Ms. Lee, she mostly wanted to please and impress her customers.

Ms. Lee comes from a close-knit Hmong community in the United States.  The community began to form in the 1970's when the United States concluded the Vietnam War and allowed allies from the Hmong community in Vietnam and neighboring countries to immigrate to the United States.  Among the Hmong community, Ms. Lee's father was the well-known mayor of a town in Laos.  When Ms. Lee's predominantly Hmong customers came to her for help preparing their taxes, they knew of her father and his legacy of service while he was a mayor.  Ms. Lee wanted to carry on her father's legacy by helping members of her community with their taxes.  Even if she did cross a legal line here, she mostly wanted to please and impress people, rather than to enrich herself.

The same Hmong community that Ms. Lee so badly wanted to please and impress has now ostracized her.  When the news of Ms. Lee's arrest initially circulated, she found that she could not attend community events without people making snide remarks and otherwise refusing to acknowledge her.  Even her mother and siblings did not want to be seen with her.  She had to stop associating with the Hmong community and even her own

family, with the exception that her mother sometimes pays her a visit.  The understanding is that while Ms. Lee's mother may pay the occasional visit, Ms. Lee cannot respond in kind and be seen paying her mother a visit.

**IV.   Ms. Lee has demonstrated substantial presentence rehabilitation since the most recent offense conduct several years ago during the tax year 2015.**

Ms. Lee's divorce in 2016 left her responsible for raising two small children as a single mother.  Her ex-husband, Rasmy Lee, has been living with his mother and going without any gainful employment.  Dkt. No. 83, PSR, p. 11, para. 57.  He occasionally sees the children for daytime outings, but has not spent a night with the children in approximately four years.  Despite the lack of support, Ms. Lee succeeded in maintaining gainful employment and making a home for her children.  *Id.*, p. 13, paras. 73-75.  She also succeeded in earning her bachelor degree and regularly provided help to people in need.  *Id.*, pp. 7, 11-12, paras. 23, 58, 68.  Alongside her current partner, she has also started two new businesses, one in nurse staffing and another in catering, although both businesses remain in their early stages and have not yet produced any income.  *Id.*, p. 12, paras. 71-72.

**V.   The court should vary downward from the advisory sentencing range.**

The factors provided in 18 U.S.C. 3553(a) all weigh in favor of a sentence below the advisory sentencing range.  Ms. Lee overcame significant hardship as a young person and developed into a mature, decent, and law-abiding adult.  Where she failed in this case, she followed by showing her substantial presentence rehabilitation.  She has maintained gainful employment, supported a household with both her children, and helped others in need.  Recently during the 2021 tax year, she worked two jobs, as both an LVN instructor and an LVN travel nurse, when the COVID-19 pandemic suddenly increased the need for nurses.  Her offense conduct stemmed primarily from a desire to please and impress others, rather than to enrich herself.  The court can achieve every legitimate aim of sentencing without imposing a full advisory-range sentence of 54 months.

**VI.   The court should order criminal monetary penalties at a rate not less than 3% of Ms. Lee's monthly gross income.**

Ms. Lee faces an uncertain financial future in light of the conviction here.  She

stands to lose her nursing career and very likely will need a vocational specialist to help her find a new way forward. Meanwhile, she will need to maintain a household and support her two children. Under any standard, the court must consider a defendant's financial circumstances when ordering payment of criminal monetary penalties, including special assessments and restitution. USSG 5E1.1(f); 18 U.S.C. 3572(a), (d), 3664(f); *United States v. Holden*, 908 F.3d 395, 403-04 (9th Cir. 2018). Based on the circumstances here, the court should order that Ms. Lee pay not less than 3% of her gross monthly income toward her criminal monetary penalties. Should her income increase, she would be subject to the court's additional order that she report the change. *See* 18 U.S.C. 3664(k). Following such a report, the court could consider increasing Ms. Lee's restitution payments.

**VII.   Conclusion.**

For the reasons stated, the court should vary downward from the advisory sentencing range and order restitution payments not less than 3% of Ms. Lee's gross monthly income.

DATED: 5/2/2023                          */s/ Richard M. Oberto*
                                         RICHARD M. OBERTO
                                         Attorney for the defendant,
                                         Deena Vang Lee